UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

---

U.S. BANK, NATIONAL ASSOCIATION, AS
TRUSTEE FOR THE REGISTERED HOLDERS
OF WAMU COMMERCIAL MORTGAGE
SECURITIES TRUST 2007-SL2, COMMERCIAL
MORTGAGE PASS-THROUGH CERTIFICATES,
SERIES 2007-SL2,

                    Plaintiff,

            -against-

R N R MANAGEMENT, LLC, a New York limited
liability company; CHITRAH RAMKISSOON, an
individual; NEW YORK CITY DEPARTMENT OF
FINANCE; and NEW YORK STATE
DEPARTMENT OF TAXATION & FINANCE,

                    Defendants.

Civil Action No.: 1:12-cv-01899-SLT-RER

**ORDER APPOINTING A RECEIVER**

---

On reading and filing the annexed Memorandum of Law in Support of Plaintiff's Motion

for the Appointment of a Receiver, signed and filed on July 26, 2012, the Declaration of Todd

Reynolds, and upon the exhibits annexed thereto, and upon all other papers and proceedings

already had herein, and it appearing to the satisfaction of this Court that this action is brought to

foreclose a mortgage on a parcel of real estate in the County of Queens from which it appears

that the Plaintiff U.S. Bank, National Association, as trustee for the registered holders of WaMu

Commercial Mortgage Securities Trust 2007-SL2, Commercial Mortgage Pass-Through

Certificates, Series 2007-SL2 ("**Plaintiff**"), is the owner and holder of a certain mortgage on the

premises hereinafter described, and Defendant R N R Management, LLC, a New York limited

liability company (the "**Borrower**") is in default in the payment of principal in the sum of

$441,910.23 as of April 1, 2012, with interest on said mortgage, and that the within proceeding

has been instituted for foreclosure of said mortgage, and that said mortgage contains a clause

authorizing the appointment of a Receiver for all rents and profits of said premises, without notice, in the event of foreclosure thereof.

NOW, on motion of Polsinelli Shughart PC, attorneys for the Plaintiff, it is

ORDERED, that Isak David Maryl is hereby appointed to act as receiver (the "**Receiver**") with respect to certain real property, improvements thereon, and personal property located at 134-10 Jamaica Avenue, Richmond Hill, New York 11418 (the "**Property**") as more fully described in the Mortgage annexed hereto as **Exhibit A**, and the Court further orders as follows:

(a)     the Receiver is appointed to act and serve as receiver with respect to the Property and with respect to the income therefrom, whether now existing or hereafter collected, including any and all rights of Borrower in any and all accounts, rights to payment, contract rights, chattel paper, documents, instruments, licenses, contracts, agreements and general intangibles relating to any of the Property, including, without limitation, income and profits derived from the operation of any business on the Property or attributable to services that occur or are provided on the Property or generated from the use and operation of the Property; and

(b)     effective immediately, the Receiver shall take and have complete and exclusive control, possession and custody of the Property, together with any and all bank accounts, credit card receipts, demand deposits, reimbursement rights, bank deposits, security deposits, and all other forms of accounts, accounts receivable, payment rights, cash, and cash equivalents;

(c)     effective immediately, the Receiver shall take any and all actions the Receiver deems reasonable and appropriate to prevent waste to and to preserve, secure, manage, maintain and safeguard the Property and all other forms of property to which the Receiver is entitled to take possession and control under this Order;

2

2197634.3

(d)     effective immediately, Borrower and all persons acting under its direction, including any current manager of the Property, shall deliver possession of the Property to the Receiver, without any right of offset or recoupment, including: (1) all keys; (2) all leases and communication and correspondence files relating thereto; (3) all security deposits, rent, prepaid rent, other sums relating to the use, enjoyment, possession, improvement or occupancy of all or any part of the Property, and any accountings of any of the foregoing; (4) a current list of the occupants of the Property, including all data with respect to each occupant; (5) any and all accounts receivable and accounts payable reports; (6) any and all documents pertaining to any ongoing litigation; (7) any and all documents pertinent to any licenses maintained in connection with the Property, and all communications and correspondence pertinent thereto; (8) any and all documents pertinent to any agreements entered into in connection with the Property, and all communications and correspondence pertinent thereto; (9) any and all contracts in effect with respect to any of the Property, and all communications and correspondence pertinent thereto; (10) any and all contracts, bids or other materials relating to any contractor work at the Property; (11) any and all payroll records, employee files, applications and other materials relevant to those persons employed by or at the Property; and (12) all such other records pertaining to the management of the Property;

(e)     effective immediately, Borrower and all persons acting under its direction, including any manager of the Property, are enjoined from in any manner disturbing the Receiver's possession of the Property or any other property that is the subject of the Court's order, and are prohibited and restrained from disposing of, dissipating, mishandling or misappropriating any of the Property or other such property, and are prohibited and restrained from collecting any rents or other sums due to any Borrower, all until further order of the Court;

2197634.3

(f)      the Receiver is immediately vested with (and Borrower and its respective agents, including the property manager, shall immediately deliver) the books and records with respect to the operation of the Property, including any and all information related to: (1) rent rolls and leases affecting the Property; (2) amounts paid by lessees and other obligors of Borrower; (3) liens, encumbrances and other interests against or affecting the Property; (4) property taxes owed by Borrower; (5) all types of insurance affecting the Property (which Borrower shall act to terminate or modify); (6) plans, specifications, surveys and drawings of the Property; (7) access codes to the Property and any units therein; (8) all operating statements of Borrower; (9) all maintenance manuals for any equipment located at the Property; and (10) all other aspects of the Property and the operation and management thereof;

(g)      the Receiver shall allow Plaintiff and its agents access to the Property at all reasonable times;

(h)      the Receiver is authorized to manage, operate and lease the Property;

(i)      the Receiver is authorized to retain, hire or discharge employees at the Property, without any liability to the Receiver, and is authorized to retain a property manager for the Property, with Approval, as defined below;

(j)      the Receiver is authorized to make payments and disbursements, in the ordinary course of business, as may be needed and proper for the preservation of the Property;

(k)      the Receiver is authorized to receive and collect any and all sums due and owing to Borrower, whether the same are now due or hereafter become due and owing, and to deposit such sums into an account in his/her own name (which sums shall not be commingled with any other funds) established and maintained by the Receiver;

4

(l)     the Receiver is authorized to continue any current insurance policies in place and is authorized to purchase further insurance relating to the Property as the Receiver deems appropriate, subject to approval from Plaintiff;

(m)     the Receiver is authorized to pay all current and past due real estate taxes, personal property taxes and any other taxes and assessments against any of the Property, but subject to approval from the Plaintiff or the Court in the event net operating income from the Property is not sufficient to pay such taxes and assessments at any given time;

(n)     the Receiver is authorized to prepare and file tax returns with respect to the Property as may be required by law, provided, however, that the Receiver is not responsible for the preparation of any tax returns for Borrower;

(o)     the Receiver is authorized to: (1) negotiate and enter into any new leases, occupancy agreements and contracts, for up to one year, in the ordinary course of the business of the Property and other property; (2) modify existing leases, occupancy agreements and contracts in the ordinary course of the business of the Property; (3) pay all utilities, expenses and other obligations secured by, or which may give rise to, liens, and all other outstanding obligations to suppliers and servicers in the ordinary course of business, including, with approval from Plaintiff, obligations incurred prior to the commencement of the receivership so long as the Receiver has determined that it is prudent to do so in order to maintain business relationships that are beneficial to the conduct of the receivership; (4) make repairs necessary to the maintenance of the Property and other property, including but not limited to all repairs necessary to remediate any environmental conditions present at the Property, in order to preserve the Property and other property in the ordinary course of business, provided, however, that the Receiver shall not make any improvements, repairs or remediation having a cost of $1000.00 or more without first

5

obtaining Approval; and (5) take all steps necessary to comply with all requirements, regulations and laws, including but not limited to environmental or health requirements, regulations and laws, applicable to the Property, and to deal with all regulatory authorities in connection with the same;

(p)     the Receiver is authorized to, in the Receiver's discretion, institute, prosecute, defend, compromise and/or intervene in or become a party to such actions or proceedings in state or federal courts which may in the Receiver's opinion be necessary for the protection, maintenance and preservation of the Property, for the carrying out of the terms of any order of the Court affecting the Property, to collect rents and other amounts now or hereafter becoming due, to remove tenants or other persons or entities from the Property, and/or to defend against any action brought against the Receiver acting in such capacity, and, with Approval to retain other counsel in connection with the foregoing;

(q)     the Receiver is authorized to enter into further lending transactions by which Plaintiff may advance monies to the Receiver (on a nonrecourse basis as to Receiver) in accordance with the terms of the Mortgage (as defined in Plaintiff's Complaint), to enable the Receiver to perform the Receiver's duties hereunder, in which case any monies loaned shall be secured by a first and prior lien and security interest on the Property in favor of Plaintiff, pursuant to Plaintiff's existing Loan Documents (as such term is defined in Plaintiff's verified complaint);

(r)     the Receiver may apply income from the Property, subject to the lien rights of Plaintiff, as follows: (1) to the Receiver's approved fees and expenses; (2) to current operating expenses of the receivership incurred by the Receiver in the ordinary course of business; (3) to

6

2197634.3

the monthly obligations owed to Plaintiff under the Loan Documents or otherwise; and (4) to other obligations, with Approval;

  (s)  the Receiver is authorized to maintain sufficient cash on hand to enable the Receiver to meet expenses, in an amount to be agreed to between the Receiver and Plaintiff;

  (t)  the Receiver is directed to file with the Court and serve on parties of record, within 45 days of entry of the order of the Court, and not less than quarterly thereafter, and within 30 days after termination of the receivership, full and complete reports, under oath, detailing receipts, disbursements and transactions affecting the Property;

  (u)  the Receiver is directed to post a surety bond in the amount of $7,950.00, the cost of which shall be an expense of the receivership;

  (v)  no person or entity may file suit against the Receiver, in the Receiver's capacity as Receiver, unless otherwise authorized in advance by this Court;

  (w)  the Receiver, and those agents and any property manager acting under the Receiver's control, shall have no personal liability in connection with their conduct in the course of this receivership, except for claims due to their gross negligence, gross or willful misconduct, malicious acts, or failures to comply with the orders of this Court;

  (x)  the Receiver is authorized to undertake all actions specifically set forth in this Order, as well as to exercise the usual and customary powers accorded to a receiver under New York law (except as otherwise limited by this Order or any subsequent order of the Court);

  (y)  the Receiver may be removed upon an order of the Court, in which event the Court shall appoint a substitute receiver;

7

2197634.3

(z)     nothing contained in this Order shall be construed as obligating the Receiver to advance the Receiver's own funds in order to pay the costs and expenses of the receivership that have been approved by the Plaintiff and the Court;

(aa)     the Receiver may apply at any time to the Court, with notice to all other parties in this case, for further instruction and for further power necessary to enable the Receiver to properly fulfill the Receiver's duties;

(bb)     the bond of the Receiver shall be canceled, and the Receiver discharged, upon the Court's approval of the Receiver's final accounting upon a motion made by Plaintiff with a copy of same served upon Borrower or its counsel;

(cc)     the entry of this Order shall not in any manner prejudice any of the other rights and remedies of Plaintiff under its Loan Documents and under applicable law;

(dd)     the entry of this Order shall not in any manner preclude any consensual resolution that may be reached between Plaintiff and any Borrower, and the Receiver shall abide by the terms of any such consensual resolution; and

(ee)     any time **"Approval"** is required with respect to any action authorized in this Order, such action shall be authorized only if and when the Receiver receives the written consent of Plaintiff to such action and when the Receiver obtains entry of a further order of the Court.

(ff)     Receiver shall forthwith deposit all monies received by Receiver at the time Receiver receives same, in Receiver's own name as Receiver, in a reputable federally insured bank and no withdrawals will be made therefrom except as directed by the Court or on a check signed by Receiver and said depository shall send monthly statements of deposits in, and withdrawals from, the said account to said Receiver, and also to the attorney for the Plaintiff.

So ordered:

s/ SLT

U. S. D. J.

11/2/12

8

2197634.3

## Exhibit A

**Mortgage (Attached)**

10

Case 1:12-cv-01899-SLT-VMS Document 12-3 Filed 06/08/12 Page 21 of 36 PageID #1440

62591542/

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2006111300364002001E4C3E |

## RECORDING AND ENDORSEMENT COVER PAGE

**PAGE 1 OF 25**

| Document ID: 2006111300364002 | Document Date: 11-07-2006 | Preparation Date: 11-13-2006 |
|---|---|---|
| Document Type: MORTGAGE | | |
| Document Page Count: 24 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| FIDELITY NATIONAL TITLE 1415 KELLUM PLACE 2 FL ****** PICKUP****** GARDEN CITY, NY 11530 516-741-5050 TITLE # 48038 Q | WASHINGTON MUTUAL BANK PO BOX 9011 COPELL, TX 75019 |

## PROPERTY DATA

| Borough | Block Lot | Unit | Address |
|---|---|---|---|
| QUEENS | 9342 5 | Entire Lot | 134-10 JAMAICA AVENUE |
| Property Type: 1-3 FAMILY WITH STORE / OFFICE | | | |

## CROSS REFERENCE DATA

CRFN_____ or Document ID._____ or _____ Year____ Reel ____ Page _____ or File Number_____

## PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| RNR MANAGEMENT LLC 134-10 JAMAICA AVENUE RICHMOND HILL, NY 11418 | WASHINGTON MUTUAL BANK PO BOX 9178 COPELL, TX 75019 |

## FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 470,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 470,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 2,350.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 4,700.00 | | $ | 0.00 |
| Spec (Additional): | $ | 1,175.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 1,410.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 9,635.00 | | | |
| Recording Fee: | $ | 157.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

RECORDED OR FILED IN THE OFFICE OF THE CITY REGISTER OF THE CITY OF NEW YORK

Recorded/Filed       11-20-2006 14:17
City Register File No.(CRFN):
2006000643813

*Annette M. Hill*

*City Register Official Signature*

| NYC DEPARTMENT OF FINANCE OFFICE OF THE CITY REGISTER | |
|---|---|
| This page is part of the instrument. The City Register will rely on the information provided by you on this page for purposes of indexing this instrument. The information on this page will control for indexing purposes in the event of any conflict with the rest of the document. | 2006111300364002001E4C3E |

## RECORDING AND ENDORSEMENT COVER PAGE

| Document ID: 2006111300364002 | Document Date: 11-07-2006 | Preparation Date: 11-13-2006 |
|---|---|---|
| Document Type: MORTGAGE | | |
| Document Page Count: 24 | | |

| PRESENTER: | RETURN TO: |
|---|---|
| FIDELITY NATIONAL TITLE<br>1415 KELLUM PLACE<br>2 FL ***** PICKUP******<br>GARDEN CITY, NY 11530<br>516-741-5050<br>TITLE # 48038 Q | WASHINGTON MUTUAL BANK<br>PO BOX 9011<br>COPELL, TX 75019 |

### PROPERTY DATA

| Borough | Block Lot | Unit | Address |
|---|---|---|---|
| QUEENS | 9342  5 | Entire Lot | 134-10 JAMAICA AVENUE |
| | Property Type: 1-3 FAMILY WITH STORE / OFFICE | | |

### CROSS REFERENCE DATA

CRFN_____ or  Document ID_____ or _____ Year_____ Reel ____ Page_____ or File Number_____

### PARTIES

| MORTGAGER/BORROWER: | MORTGAGEE/LENDER: |
|---|---|
| RNR MANAGEMENT LLC<br>134-10 JAMAICA AVENUE<br>RICHMOND HILL, NY 11418 | WASHINGTON MUTUAL BANK<br>PO BOX 9178<br>COPELL, TX 75019 |

### FEES AND TAXES

| Mortgage | | | Filing Fee: | | |
|---|---|---|---|---|---|
| Mortgage Amount: | $ | 470,000.00 | | $ | 0.00 |
| Taxable Mortgage Amount: | $ | 470,000.00 | NYC Real Property Transfer Tax: | | |
| Exemption: | | | | $ | 0.00 |
| TAXES: County (Basic): | $ | 2,350.00 | NYS Real Estate Transfer Tax: | | |
| City (Additional): | $ | 4,700.00 | | $ | 0.00 |
| Spec (Additional): | $ | 1,175.00 | | | |
| TASF: | $ | 0.00 | | | |
| MTA: | $ | 1,410.00 | | | |
| NYCTA: | $ | 0.00 | | | |
| Additional MRT: | $ | 0.00 | | | |
| TOTAL: | $ | 9,635.00 | | | |
| Recording Fee: | $ | 157.00 | | | |
| Affidavit Fee: | $ | 0.00 | | | |

Loan No.: 6259l5421

RECORDING REQUESTED BY AND WHEN
RECORDED MAIL TO:

WASHINGTON MUTUAL BANK, a federal association
Attention: MFL Closing
National Commercial Operations Center
P.O. Box 9011
Coppell, TX 75019-9011

BE ADVISED THAT THE PROMISSORY NOTE SECURED BY THIS
SECURITY INSTRUMENT MAY PROVIDE FOR ONE OR MORE OF THE
FOLLOWING: (1) A VARIABLE RATE OF INTEREST; (2) A BALLOON
PAYMENT AT MATURITY, (3) DEFERRAL OF A PORTION OF ACCRUED
INTEREST UNDER CERTAIN CIRCUMSTANCES WITH INTEREST SO
DEFERRED ADDED TO THE UNPAID PRINCIPAL BALANCE OF THE NOTE
AND SECURED HEREBY.

MORTGAGE, SECURITY AGREEMENT,
ASSIGNMENT OF LEASES AND RENTS
AND FIXTURE FILING

Notwithstanding anything to the contrary set forth in this Security Instrument, the maximum
amount of principal indebtedness secured by this Security Instrument or which under any
contingency may become secured hereby at any time hereafter is $470,000.00 together with interest
thereon, and all amounts expended by Lender to maintain the lien of this Security Instrument or
protect any of the Property, including without limitation, all amounts in respect of insurance
premiums and real estate taxes, charges and assessments, litigation expenses to prosecute or defend
the rights, remedies and lien of this Security Instrument or title to the Property, and any costs,
charges or amounts to which Lender becomes subrogated upon payment, whether under
recognized principles of law or equity or under express statutory authority.

THIS MORTGAGE, SECURITY AGREEMENT, ASSIGNMENT OF LEASES AND RENTS
AND FIXTURE FILING (this "Security Instrument"), is made this 7th day of November, 2006 between

R N R Management, LLC a New York limited liability company,

the address of which is 134-10 Jamaica Avenue, Richmond Hill, NY 11418, as mortgagor ("Borrower");
and WASHINGTON MUTUAL BANK, a federal association, at its offices at National Commercial
Operations Center, P.O. Box 9178, Coppell, Texas 75019-9178, Attention: Portfolio Administration, as
mortgagee ("Lender").

1.  GRANTING CLAUSE. Borrower, in consideration of good and valuable consideration, the
receipt and sufficiency of which are hereby acknowledged, and in order to secure the obligations
described in Section 3 below, irrevocably mortgages, warrants, grants, conveys and assigns to Lender and
its successors and assigns, forever, all of Borrower's estate, right, title, interest, claim and demand in and
to the property in the county of Queens, state of New York, with a street address of 134-10 Jamaica
Avenue, Richmond Hill, NY 11418 (which address is provided for reference only and shall in no way
limit the description of the real and personal property otherwise described in this Section 1), described as
follows, whether now existing or hereafter acquired  (all of the property described in all parts of this
Section 1 and all additional property, if any, described in Section 2 is called the "Property"):

Page 1 of 21

Loan No.: 625915421

1.1 **Land and Appurtenances**.  The land described on Exhibit A hereto, and all tenements, hereditaments, rights-of-way, easements, appendages and appurtenances thereto belonging or in any way appertaining, including without limitation all of the right, title and interest of Borrower in and to any avenues, streets, ways, alleys, vaults, strips or gores of land adjoining that property, all rights to water, water stock, drains, drainage and air rights relating to that property, and all claims or demands of Borrower either in law or in equity in possession or expectancy of, in and to that property; and

1.2 **Improvements and Fixtures**.  All buildings, structures and other improvements now or hereafter erected on the property described in 1.1 above, and all facilities, fixtures, machinery, apparatus, installations, goods, equipment, inventory, furniture, building materials and supplies and other properties of whatsoever nature, now or hereafter located in or used or procured for use in connection with that property, it being the intention of the parties that all property of the character described above that is now owned or hereafter acquired by Borrower and that is affixed or attached to, stored upon or used in connection with the property described in 1.1 above shall be, remain or become a portion of that property and shall be covered by and subject to the lien of this Security Instrument, together with all contracts, agreements, permits, plans, specifications, drawings, surveys, engineering reports and other work products relating to the construction of the existing or any future improvements on the Property, any and all rights of Borrower in, to or under any architect's contracts or construction contracts relating to the construction of the existing or any future improvements on the Property, and any performance and/or payment bonds issued in connection therewith, together with all trademarks, trade names, copyrights, computer software and other intellectual property used by Borrower in connection with the Property; and

1.3 **Enforcement and Collection**.  Any and all rights of Borrower without limitation to make claim for, collect, receive and receipt for any and all rents, income, revenues, issues, earnest money, deposits, refunds (including but not limited to refunds from taxing authorities, utilities and insurers), royalties, and profits, including mineral, oil and gas rights and profits, insurance proceeds of any kind (whether or not Lender requires such insurance and whether or not Lender is named as an additional insured or loss payee of such insurance), condemnation awards and other moneys, payable or receivable from or on account of any of the Property, including interest thereon, or to enforce all other provisions of any other agreement (including those described in Section 1.2 above) affecting or relating to any of the Property, to bring any suit in equity, action at law or other proceeding for the collection of such moneys or for the specific or other enforcement of any such agreement, award or judgment, in the name of Borrower or otherwise, and to do any and all things that Borrower is or may be or become entitled to do with respect thereto, provided, however, that no obligation of Borrower under the provisions of any such agreements, awards or judgments shall be impaired or diminished by virtue hereof, nor shall any such obligation be imposed upon Lender; and

1.4 **Accounts and Income**.  Any and all rights of Borrower in any and all accounts, rights to payment, contract rights, chattel paper, documents, instruments, licenses, contracts, agreements and general intangibles relating to any of the Property, including, without limitation, income and profits derived from the operation of any business on the Property or attributable to services that occur or are provided on the Property or generated from the use and operation of the Property; and

1.5 **Leases**.  All of Borrower's rights as landlord in and to all existing and future leases and tenancies, whether written or oral and whether for a definite term or month to month or otherwise, now or hereafter demising all or any portion of the property described in 1.1 and 1.2 above, including all renewals and extensions thereof and all rents, deposits and other amounts received or receivable thereunder (in accepting this Security Instrument Lender assumes no liability for the performance of any such lease); and

1.6 **Books and Records**.  All books and records of Borrower relating to the foregoing in any form.

Loan No.: 625915421

## 2. SECURITY AGREEMENT AND ASSIGNMENT OF LEASES AND RENTS.

2.1 **Security Agreement**. To the extent any of the property described in Section 1 is personal property, Borrower, as debtor, grants to Lender, as secured party, a security interest therein together with a security interest in all other personal property of whatsoever nature that is located on or used or to be used in connection with any of the property described in Section 1, and any products or proceeds of any thereof, pursuant to the Uniform Commercial Code of the state of New York (the "UCC"), on the terms and conditions contained herein. Borrower hereby authorizes Lender to file any financing statement, fixture filing or similar filing to perfect the security interests granted in this Security Instrument without Borrower's signature.

### 2.2 **Assignment of Leases and Rents**.

(a) **Absolute Assignment.** Borrower hereby absolutely and unconditionally grants, transfers, conveys, sells, sets over and assigns to Lender all of Borrower's right, title and interest now existing and hereafter arising in and to the leases, subleases, concessions, licenses, franchises, occupancy agreements, tenancies, subtenancies and other agreements, either oral or written, now existing and hereafter arising which affect the Property, Borrower's interest therein or any improvements located thereon, together with any and all security deposits, guaranties of the lessees' or tenants' obligations (including any and all security therefor) and other, security under any such leases, subleases, concessions, licenses, franchises, occupancy agreements, tenancies, subtenancies and other agreements (all of the foregoing, and any and all extensions, modifications and renewals thereof, shall be referred to, collectively, as the "Leases"), and hereby gives to and confers upon Lender the right to collect all the income, rents, issues, profits, royalties and proceeds from the Leases and any business conducted on the Property and any and all prepaid rent and security deposits thereunder (collectively, the "Rents"). This Security Instrument is intended by Lender and Borrower to create and shall be construed to create an absolute assignment to Lender of all of Borrower's right, title and interest in and to the Leases and the Rents and shall not be deemed merely to create a security interest therein for the payment of any indebtedness or the performance of any obligations under the Loan Documents (as defined below). Borrower irrevocably appoints Lender its true and lawful attorney at the option of Lender at any time to demand, receive and enforce payment, to give receipts, releases and satisfactions and to sue, either in the name of Borrower or in the name of Lender, for all such Rents and apply the same to the obligations secured by this Security Instrument.

(b) **Revocable License to Collect.** Notwithstanding the foregoing assignment of Rents, so long as no Event of Default (as defined below) remains uncured, Borrower shall have a revocable license, to collect all Rents, and to retain the same. Upon any Event of Default, Borrower's license to collect and retain Rents shall terminate automatically and without the necessity for any notice.

(c) **Collection and Application of Rents by Lender.** While any Event of Default remains uncured: (i) Lender may at any time, without notice, in person or by agent or by court-appointed receiver, and without regard to the adequacy of any security for the obligations secured by this Security Instrument, enter upon any portion of the Property and/or, with or without taking possession thereof, in its own name sue for or otherwise collect Rents (including past due amounts); and (ii) without demand by Lender therefor, Borrower shall promptly deliver to Lender all prepaid rents, deposits relating to Leases or Rents, and all other Rents then held by or thereafter collected by Borrower, whether prior to or during the continuance of any Event of Default. Any Rents collected by or delivered to Lender may be applied by Lender against the obligations secured by this Security Instrument, less all expenses, including attorneys' fees and disbursements, in such order as Lender shall determine in its sole and absolute discretion. No application of Rents against any obligation secured by this Security Instrument or other action taken by Lender under this Section 2.2 shall be deemed or construed to cure or waive any Event of

Loan No.: 625915421

Default, or to invalidate any other action taken in response to such Event of Default, or to make Lender a mortgagee-in-possession of the Property.

        (d)   **Direction to Tenants.** Borrower hereby irrevocably authorizes and directs the tenants under all Leases to pay all amounts owing to Borrower thereunder to Lender following receipt of any written notice from Lender that states that an Event of Default remains uncured and that all such amounts are to be paid to Lender. Borrower further authorizes and directs all such tenants to pay all such amounts to Lender without any right or obligation to inquire as to the validity of Lender's notice and regardless of the fact that Borrower has notified any such tenants that Lender's notice is invalid or has directed any such tenants not to pay such amounts to Lender.

    3.   OBLIGATIONS SECURED. This Security Instrument is given for the purpose of securing:

        3.1 **Performance and Payment.** The performance of the obligations contained herein and the payment of $470,000.00 with interest thereon and all other amounts payable according to the terms of a promissory note of even date herewith made by Borrower, payable to Lender or order, and any and all extensions, renewals, modifications or replacements thereof, whether the same be in greater or lesser amounts (the "Note"), which Note may provide for one or more of the following: (a) a variable rate of interest; or (b) a balloon payment at maturity.

        3.2 **Future Advances.** The repayment of any and all sums advanced or expenditures made by Lender subsequent to the execution of this Security Instrument for the maintenance or preservation of the Property or advanced or expended by Lender pursuant to any provision of this Security Instrument subsequent to its execution, together with interest thereon.

        3.3 **Other Amounts.** All other obligations and amounts now or hereafter owing by Borrower to Lender under this Security Instrument, the Note or any other document, instrument or agreement evidencing, securing or otherwise relating to the loan evidenced by the Note and any and all extensions, renewals, modifications or replacements of any thereof (collectively, the "Loan Documents"); provided, however, that this Security Instrument does not and shall not in any event be deemed to, secure the obligations owing to Lender under: (a) any certificate and indemnity agreement regarding hazardous substances (the "Indemnity Agreement") executed in connection with such loan (or any obligations that are the substantial equivalent thereof); or (b) any guaranty of such loan.

    4.   WARRANTIES AND COVENANTS OF BORROWER. Borrower warrants, covenants, and agrees:

        4.1 **Warranties.**

        (a)   Borrower has full power and authority to mortgage the Property to Lender and warrants the Property to be free and clear of all liens, charges, and other monetary encumbrances except those appearing in the title insurance policy accepted by Lender in connection with this Security Instrument.

        (b)   The Property is free from damage and no matter has come to Borrower's attention (including, but not limited to, knowledge of any construction defects or nonconforming work) that would materially impair the value of the Property as security.

        (c)   The loan evidenced by the Note and secured by this Security Instrument is primarily for commercial, industrial or business purposes and is not primarily for personal, family or household purposes.

        4.2 **Preservation of Lien.** Borrower will preserve and protect the priority of this Security Instrument as a first lien on the Property. If Borrower fails to do so, Lender may take any and all

Loan No.: 625915421

actions necessary or appropriate to do so and all sums expended by Lender in so doing shall be treated as part of the obligations secured by this Security Instrument, shall be paid by Borrower upon demand by Lender and shall bear interest at the highest rate borne by any of the obligations secured by this Security Instrument.

4.3 **Repair and Maintenance of Property**. Borrower will keep the Property in good condition and repair, which duty shall include but is not limited to cleaning, painting, landscaping, repairing, and refurbishing of the Property; will complete and not remove or demolish, alter, or make additions to any building or other improvement that is part of the Property, or construct any new structure on the Property, without the express written consent of Lender; will underpin and support when necessary any such building or other improvement and protect and preserve the same; will complete or restore promptly and in good and workmanlike manner any such building or other improvement that may be damaged or destroyed and pay when due all claims for labor performed and materials furnished therefor; will not commit, suffer, or permit any act upon the Property in violation of law; and will do all other acts that from the character or use of the Property may be reasonably necessary for the continued operation of the Property in a safe and legal manner, the specific enumerations herein not excluding the general.

4.4 **Insurance**.

4.4.1 **All Risk/Hazard**. Borrower will provide and maintain, as further security for the faithful performance of the obligations secured by this Security Instrument, insurance covering fire and other perils substantially equivalent to those insured under the Causes of Loss—Special Form published by the Insurance Service Office ("ISO"), and against such other perils as may be specified by Lender (including insurance against earthquake/earth movement, if required by Lender on a case-by-case basis) in an amount not less than one hundred percent (100%) of the replacement cost of the Property (or, if less, the balance owing under the Note and the other Loan Documents). Such insurance policy or policies shall include rental income interruption coverage as more specifically described in Section 4.4.3 below. If any of the improvements on the Property are at any time located in a federally-designated special flood hazard area in which flood insurance is available, Borrower must provide Lender with flood insurance in an amount, and with deductibles, as specified by Lender. All policies of insurance on the Property, whether or not required by the terms of this Security Instrument (including but not limited to earthquake/earth movement insurance), shall name Lender as mortgagee and loss payee pursuant to a mortgage endorsement on a form acceptable to Lender, which form must provide that Lender will not have its interest voided by the act or omission of Borrower and that Lender may file a claim directly with the insurer (an "Acceptable Mortgage Endorsement"). Lender shall have the right to control or direct the proceeds of all such policies of insurance, whether or not required by the terms of this Security Instrument, as provided in Section 4.4.6 below, and all proceeds thereof are hereby assigned to Lender as security for the obligations secured by this Security Instrument. Each policy of insurance must have a deductible of an amount satisfactory to Lender in its sole discretion. Borrower shall be responsible for all uninsured losses and deductibles.

4.4.2 **Liability**. Borrower will maintain commercial general liability insurance on an occurrence form substantially equivalent to ISO form CG 0001 covering the legal liability of Borrower against claims occurring on, in, or about the Property with coverage of not less than One Million Dollars ($1,000,000) per occurrence, naming Lender an additional insured and having a deductible of an amount satisfactory to Lender in its sole discretion.

4.4.3 **Rental Income Interruption**. Borrower will maintain rental income interruption insurance in an amount equal to at least twelve (12) months' gross rental income from the Property as determined by Lender from time to time, and naming Lender as loss payee on an Acceptable Mortgage Endorsement. The amount collected under any and all rental income interruption insurance on

Loan No.: 625915421

the Property, whether or not required by this Security Instrument, shall be applied as provided in Section 4.4.6.

     4.4.4  **Changes in Insurance Requirements**. Lender may change its insurance requirements from time to time throughout the term of the obligations secured by this Security Instrument by giving notice of such changes to Borrower. Without limiting the generality of the foregoing, Borrower shall from time to time obtain such additional coverages or make such increases in the amounts of existing coverage as may be required by written notice from Lender.

     4.4.5  **General Provisions**. All policies of insurance required to be maintained by Borrower pursuant to this Section 4.4 shall: (i) be primary and noncontributory with any other insurance Borrower may carry; and (ii) be in form and substance and with companies acceptable to Lender which are authorized to conduct business in the state in which the Property is located and which have a current rating from the Best Key Rating Guide that is acceptable to Lender. Lender reserves the right, in its reasonable discretion, to increase the amount of the required coverages, require insurance against additional risks, or withdraw approval of any insurance company at any time. Borrower shall deliver to Lender evidence (in such form as Lender may require) of all insurance coverage on the Property and a certified copy of all policies of such insurance. Borrower shall obtain renewals or replacements of any policies that expire and deliver evidence of such renewals to Lender no later than the expiration date of the policy being renewed or replaced. All policies and renewals thereof shall contain provision for ten (10) days' notice to Lender prior to cancellation for nonpayment of premiums and thirty (30) days' notice to Lender prior to cancellation for any other reason. If Borrower fails to maintain insurance in accordance with this Security Instrument and the other Loan Documents, Lender may, but need not, obtain insurance on Borrower's behalf; this insurance is called "force placed insurance." For instance, without limitation, Lender may obtain force placed insurance if: (a) Borrower fails to deliver to Lender, prior to the expiration of any such required insurance coverage, evidence satisfactory to Lender that Borrower has renewed or replaced such coverage; (b) the amount of insurance is reduced below Lender's requirements; (c) the deductible is increased above Lender's requirements; or (d) the insurer providing the insurance does not meet Lender's insurance company rating requirements.

     4.4.6  **Damage and Destruction**.

     (a)  **Borrower's Obligations**. In the event of any damage to or loss or destruction of the Property (a "Casualty"): (i) if it could reasonably be expected to cost more than $25,000 to repair the Casualty, Borrower shall give prompt written notice of the Casualty to Lender and to Borrower's insurer, and shall make a claim under each insurance policy providing coverage therefor; (ii) Borrower shall take such actions as are necessary or appropriate to preserve and protect the Property; (iii) if the aggregate proceeds of any and all insurance policies insuring the Property, whether or not required by this Security Instrument, that are payable as a result of the Casualty (collectively, the "Insurance Proceeds") could reasonably be expected to exceed $25,000, or if a Default exists, Borrower shall take such actions as are necessary or appropriate to ensure that all Insurance Proceeds are paid to Lender forthwith to be held by Lender until applied to the obligations secured hereby or disbursed in accordance with this Section 4.4.6; and (iv) unless otherwise instructed by Lender, regardless of whether the Insurance Proceeds, if any, are sufficient for the purpose, Borrower shall promptly commence and diligently pursue to completion in a good, workmanlike and lien-free manner the restoration, replacement and rebuilding of the Property as nearly as possible to its value, condition and character immediately prior to the Casualty (collectively, the "Restoration"). If the Restoration will cost more than $25,000 to repair, Borrower shall submit the proposed plans and specifications for the Restoration, and all construction contracts, architect's contracts, other contracts in connection with the Restoration, and such other documents as Lender may reasonably request to Lender for its review and approval. Borrower shall not begin the Restoration unless and until Lender gives its written approval of such plans, specifications, contracts and other documents, with such revisions as Lender may reasonably require. Notwithstanding

Loan No.: 625915421

the foregoing, Lender shall not be responsible for the sufficiency, completeness, quality or legality of any such plans, specifications, contracts or other documents. Borrower shall pay, within ten days after demand by Lender, all costs reasonably incurred by Lender in connection with the adjustment, collection and disbursement of Insurance Proceeds pursuant to this Security Instrument or otherwise in connection with the Casualty or the Restoration.

(b) **Lender's Rights**. Lender shall have the right and power to receive and control all Insurance Proceeds required to be paid to it pursuant to subsection (a)(iii) above. Borrower hereby authorizes and empowers Lender, in its own name or as attorney-in-fact for Borrower (which power is coupled with an interest and is irrevocable so long as this Security Interest remains of record), to make proof of loss, to settle, adjust and compromise any claim under insurance policies on the Property, to appear in and prosecute any action arising from such insurance policies, to collect and receive Insurance Proceeds, and to deduct therefrom Lender's expenses incurred in the adjustment, collection and disbursement of such Insurance Proceeds or otherwise in connection with the Casualty or the Restoration. Each insurance company concerned is hereby irrevocably authorized and directed to make payment of all Insurance Proceeds directly to Lender. Notwithstanding anything to the contrary, Lender shall not be responsible for any such insurance, the collection of any Insurance Proceeds, or the insolvency of any insurer.

(c) **Application of Proceeds**. If, at any time while Lender holds any Insurance Proceeds, an Event of Default exists or Lender determines in its reasonable discretion that the security for the obligations secured hereby is impaired, Lender shall have the option, in its sole discretion, to apply the Insurance Proceeds to the obligations secured hereby in such order as Lender may determine (or to hold such proceeds for future application to those obligations). Without limiting the generality of the foregoing, Lender's security will be deemed to be impaired if: (i) an Event of Default exists; (ii) Borrower fails to satisfy any condition precedent to disbursement of Insurance Proceeds to pay the cost of the Restoration within a reasonable time; or (iii) Lender determines in its reasonable discretion that it could reasonably be expected that (A) Borrower will not have sufficient funds to complete the Restoration and timely pay all expenses of the Property and all payments due under the Note and the other Loan Documents through the completion of the Restoration and any leaseup period thereafter, (B) the rental income from the Property will be insufficient to timely pay all expenses of the Property and payments due under the Note and the other Loan Documents on an ongoing basis after completion of the Restoration, or (C) the Restoration cannot be completed at least two years prior to the maturity date of the Note and within one year after the date of the Casualty.

(d) **Disbursement of Proceeds**. If Lender is not entitled to apply the Insurance Proceeds to the obligations secured hereby, Lender (or at Lender's election, a disbursing or escrow agent selected by Lender and whose fees shall be paid by Borrower) shall disburse the Insurance Proceeds for the Restoration from time to time as the Restoration progresses, but only after satisfaction, at Borrower's expense, of such conditions precedent to such disbursements as Lender may reasonably require including but not limited to the following: (i) Borrower shall have delivered to Lender evidence reasonably satisfactory to Lender of the estimated cost of the Restoration; (ii) Lender shall have approved the plans, specifications and contracts for the Restoration as required by Section 4.4.6(a); (iii) Borrower shall have delivered to Lender funds in addition to the Insurance Proceeds in an amount sufficient in Lender's reasonable judgment to complete and fully pay for the Restoration; (iv) Borrower shall have delivered to Lender such building permits, other permits, architect's certificates, waivers of lien, contractor's sworn statements, title insurance endorsements, plats of survey and other evidence of cost, payment and performance as Lender may reasonably require and approve; and (v) if required by Lender, Borrower shall have entered into an agreement providing in greater detail for the Restoration, the disbursement of Insurance Proceeds and related matters. No payment made prior to the final completion of the Restoration shall exceed ninety percent of the value of the work performed and materials incorporated into the Property from time to time, as such value is determined by Lender in its reasonable

Loan No.: 625915421

judgment. Disbursements may, at Lender's election, be made on a percentage of completion basis or on such other basis as is acceptable to Lender. Disbursements shall be subject to Borrower's delivery of such lien waivers as Lender may require, and otherwise on terms and subject to conditions acceptable to Lender. From time to time after commencement of the Restoration, if so requested by Lender, Borrower shall deposit with Lender funds in excess of the Insurance Proceeds which, together with the Insurance Proceeds and all funds previously deposited with Lender in connection with the Restoration, must at all times be at least sufficient in the reasonable judgment of Lender to pay the entire unpaid cost of the Restoration. Funds so deposited by Borrower may at Lender's option be disbursed prior to the disbursement of Insurance Proceeds. Lender may retain a construction consultant to inspect the Restoration and related matters on Lender's behalf and to advise Lender with respect thereto and Borrower shall pay the cost thereof; provided that neither Borrower nor any other person or entity other than Lender shall have any right to rely on any inspection or advice of such consultant. Such consultant shall not be the agent of Lender and shall not have the power to bind Lender in any way. Any surplus Insurance Proceeds or other funds held by Lender pursuant to this Section 4.4.6 that may remain after payment of all costs of the Restoration shall be paid to Borrower (or to such other person or entity as Lender reasonably determines is entitled thereto) so long as no Default then exists. No interest shall be allowed to Borrower on account of any Insurance Proceeds or other funds held by Lender pursuant to this Section 4.4.6, but at Borrower's request, Lender will deposit such amounts into a blocked interest-bearing account with Lender over which Lender has sole possession, authority and control, in which Lender has a perfected first-priority security interest to secure the obligations secured by this Security Instrument, and otherwise on terms and conditions satisfactory to Lender in its sole discretion. Notwithstanding the above, if an Event of Default exists prior to full disbursement of the Insurance Proceeds and any other funds held by Lender pursuant to this Section 4.4.6, any undisbursed portion thereof may, at Lender's option, be applied against the obligations secured by this Security Instrument, whether or not then due, in such order and manner as Lender shall select.

(c) **Effect on the Indebtedness.** Any reduction in the obligations secured hereby resulting from the application of Insurance Proceeds or other funds pursuant to this subsection 4.4.6 shall be deemed to take effect only on the date of such application; provided that, if any Insurance Proceeds are received after the Property is sold in connection with a judicial or nonjudicial foreclosure of this Security Instrument, or is transferred by deed in lieu of such foreclosure, notwithstanding any limitation on Borrower's liability contained herein or in the Note, the purchaser at such sale (or the grantee under such deed) shall have the right to receive and retain all such Insurance Proceeds and all unearned premiums for all insurance on the Property. No application of Insurance Proceeds or other funds to the obligations secured hereby shall result in any adjustment in the amount or due dates of installments due under the Note. No application of Insurance Proceeds to the obligations secured hereby shall, by itself, cure or waive any Default or any notice of default under this Security Instrument or invalidate any act done pursuant to such notice or result in the waiver of any collateral securing the Note.

4.5 **Right of Inspection.** Borrower shall permit Lender or its agents or independent contractors (including, but not limited to, appraisers, environmental consultants and construction consultants), at all reasonable times, to enter upon and inspect the Property.

4.6 **Compliance with Laws, Etc.; Preservation of Licenses.** Borrower shall comply in all material respects with (a) all laws, statutes, ordinances, rules, regulations, licenses, permits, approvals, orders, judgments and other requirements of governmental authorities relating to the Property or Borrower's use thereof, and (b) all easements, licenses and agreements relating to the Property or Borrower's use thereof. Borrower shall observe and comply with all requirements necessary to the continued existence and validity of all rights, licenses, permits, privileges, franchises and concessions relating to any existing or presently contemplated use of the Property, including but not limited to any zoning variances, special exceptions and nonconforming use permits.

Loan No.: 625915421

4.7 **Further Assurances**. Borrower will, at its expense, from time to time execute and deliver any and all such instruments of further assurance and other instruments and do any and all such acts, or cause the same to be done, as Lender deems necessary or advisable to grant the Property to Lender or to carry out more effectively the purposes of this Security Instrument.

4.8 **Legal Actions**. Borrower will appear in and defend any action or proceeding before any court or administrative body purporting to affect the security hereof or the rights or powers of Lender; and will pay all costs and expenses, including cost of evidence of title, title insurance premiums and any fees of attorneys, appraisers, environmental inspectors and others, incurred by Lender, in a reasonable sum, in any such action or proceeding in which Lender may appear, in any suit or other proceeding to foreclose this Security Instrument.

4.9 **Taxes, Assessments and Other Liens**. Borrower will pay prior to delinquency all taxes, assessments, encumbrances, charges, and liens with interest, on the Property or any part thereof, including but not limited to any tax on or measured by rents of the Property, the Note, this Security Instrument, or any obligation or part thereof secured hereby.

4.10 **Expenses**. Borrower will pay all costs, fees and expenses reasonably incurred by Lender in connection with this Security Instrument.

4.11 **Repayment of Expenditures**. Borrower will pay within five (5) days after written demand all amounts secured by this Security Instrument, other than principal of and interest on the Note, with interest from date of expenditure at the rate of interest borne by the Note and the repayment thereof shall be secured by this Security Instrument.

4.12 **Financial and Operating Information**. Within ninety (90) days after the end of each fiscal year of Borrower, Borrower shall furnish to Lender the following in such form as Lender may require: (a) an itemized statement of income and expenses for Borrower's operation of the Property for that fiscal year; and (b) a rent schedule for the Property showing the name of each tenant, and for each tenant, the space occupied, the lease expiration date, the rent payable for the current month, the date through which rent has been paid, all security deposits held (and the institution in which they are held) and any related information requested by Lender.

In addition, within twenty (20) days after written request by Lender, Borrower shall furnish to Lender such financial statements and other financial, operating and ownership information about the Property, Borrower, owners of equity interests in Borrower, and guarantors of the obligations secured hereby, as Lender may require.

If Borrower fails to provide Lender with any of the financial and operating information required to be provided under this Section within the time periods required under this Section and such failure continues after Lender has provided Borrower with thirty (30) days' notice and opportunity to cure such failure, Borrower shall pay to Lender, as liquidated damages for the extra expense in servicing the loan secured hereby, Five Hundred Dollars ($500) on the first day of the month following the expiration of such thirty (30)-day period and One Hundred Dollars ($100) on the first day of each month thereafter until such failure is cured. All such amounts shall be secured by this Security Instrument. Payment of such amounts shall not cure any Default or Event of Default resulting from such failure.

4.13 **Sale, Transfer, or Encumbrance of Property**.

(a) **Encumbrances; Entity Changes**. Except as otherwise provided below, Borrower shall not, without the prior written consent of Lender, further encumber the Property or any interest therein, or cause or permit, directly or indirectly, whether beneficial or legal, any change in

Loan No.: 625915421

the entity, ownership, or control of Borrower without first repaying in full the Note and all other sums secured hereby.

(b)   **Sales, Transfers, Conveyances.**   Except as otherwise provided below, Borrower shall not, without the prior written consent of Lender (which consent shall be subject to the conditions set forth below), sell, transfer, or otherwise convey the Property or any interest therein, directly or indirectly, whether beneficial or legal, voluntarily or involuntarily, without first repaying in full the Note and all other sums secured hereby.

(c)   **Conditions to Lender's Consent.**   Lender will not unreasonably withhold its consent to a sale, transfer, or other conveyance of the Property, provided however, that:

(i)   Borrower shall provide to Lender a loan application on such form as Lender may require executed by the proposed transferee and accompanied by such other documents as Lender may require in connection therewith;

(ii)   Lender may consider the factors normally used by Lender as of the time of the proposed assumption in the process of determining whether or not to lend funds, and may require that the Property and the proposed transferee meet Lender's then-current underwriting requirements as of that time;

(iii)   Lender may specifically evaluate the financial responsibility, structure and real estate operations experience of any potential transferee;

(iv)   Lender may require that it be provided at Borrower's expense, with an appraisal of the Property, an on-site inspection of the Property, and such other documents and items, from appraisers, inspectors and other parties satisfactory to Lender, and may require that Borrower or the transferee of the Property correct any items of deferred maintenance that may be identified by Lender;

(v)   Lender may, as a condition to granting its consent to a sale, transfer, or other conveyance of the Property, require in its sole discretion the payment by Borrower of a fee (the "Consented Transfer Fee") of one percent (1%) of the unpaid principal balance of the Note; and

(vi)   No Default or Event of Default (each as defined below) has occurred and is continuing.

In connection with any sale, transfer or other conveyance of the Property to which Lender is asked to consent, Borrower agrees to pay to Lender, in addition to any sums specified above, for Lender's expenses incurred in reviewing and evaluating such matter, the following amounts:  (i) a nonrefundable review fee in accordance with Lender's fee schedule in effect at the time of the request, which fee shall be paid by Borrower to Lender upon Borrower's request for Lender's consent and shall be applied to the Consented Transfer Fee if Lender's consent is given to such sale, transfer, or other conveyance of the Property; (ii) Lender's reasonable attorneys' fees and other reasonable out-of-pocket expenses incurred in connection with such request for consent and in connection with such sale, transfer or other conveyance; and (iii) document preparation fees and other fees in accordance with Lender's fee schedule in effect at the time. In addition, prior to or at the time of any sale, transfer or other conveyance to which Lender grants its consent, Borrower shall obtain and provide to Lender a fully and duly executed and acknowledged assumption agreement in form and substance satisfactory to Lender under which the transferee of the Property assumes liability for the loan evidenced by the Note and secured by this Security Instrument together with such financing statements and other documents as Lender may require. Borrower and any guarantors of such loan shall continue to be obligated for repayment of such loan

Loan No.: 625915421

unless and until Lender has entered into a written assumption agreement specifically releasing them from such liability in Lender's sole discretion.

Consent to any one such occurrence shall not be deemed a waiver of the right to require consent to any future occurrences.

(d) <u>Unconsented Transfers</u>. In each instance in which a sale, transfer or other conveyance of the Property, or any change in the entity, ownership, or control of Borrower, occurs without Lender's prior written consent thereto having been given, and regardless of whether Lender elects to accelerate the maturity date of the Note (any of the foregoing events is referred to as an "Unconsented Transfer"), Borrower and its successors shall be jointly and severally liable to Lender for the payment of a fee (the "Unconsented Transfer Fee") of two percent (2.0%) of the unpaid principal balance of the Note as of the date of such Unconsented Transfer. The Unconsented Transfer Fee shall be due and payable upon written demand therefor by Lender, and shall be secured by this Security Instrument; provided, however, that payment of the Unconsented Transfer Fee shall not cure any Event of Default resulting from the Unconsented Transfer.

(e) <u>No Waiver</u>. Lender's waiver of any of the Consented Transfer Fee, the Unconsented Transfer Fee or any other amount payable hereunder, in whole or in part for any one sale, transfer or other conveyance shall not preclude the imposition thereof in connection with any other sale, transfer or other conveyance.

(f) <u>Permitted Transfers</u>. Notwithstanding the foregoing and notwithstanding Section 4.14, Lender's consent will not be required, and neither the Consented Transfer Fee nor the Unconsented Transfer Fee will be imposed, for any Permitted Transfer (as defined below), so long as all Transfer Requirements (as defined below) applicable to such Permitted Transfer are timely satisfied. As used herein, the following terms have the meanings set forth below:

"Permitted Transfer" means:

(i) The transfer of not more than twenty-five percent (25%) in the aggregate during the term of the Note of the Equity Interests (as defined below) in Borrower (or in any entity that owns, directly or indirectly through one or more intermediate entities, an Equity Interest in Borrower), in addition to any transfers permitted under subparagraphs (ii) or (iii) of this definition (a "Minority Interest Transfer");

(ii) A transfer that occurs by devise, descent or operation of law upon the death of a natural person (a "Decedent Transfer"); or

(iii) A transfer of interests in the Property, in Borrower or in any entity that owns, directly or indirectly through one or more intermediate entities, an Equity Interest in Borrower, to non-minor immediate family members (i.e., the parents, spouse, siblings, children and other lineal descendants, and the spouses of parents, siblings, children and other lineal descendants) of the transferor or to one or more trusts established for the benefit of the transferor and/or such immediate family members of the transferor (an "Estate Planning Transfer").

"Transfer Requirements" means, with respect to any Permitted Transfer, all of the following that apply to that transfer:

(i) In the case of any Permitted Transfer, none of the persons or entities liable for the repayment of the loan evidenced by the Note shall be released from such liability.

(ii) In the case of any Minority Interest Transfer or Estate Planning Transfer, there shall be no change in the individuals exercising day-to-day powers of

Case 1:12-cv-01899-SLT-VMS Document 12-5 Filed 06/06/12 Page 24 of 36 PageID #: 1473

Loan No.: 625915421

decisionmaking, management and control over either Borrower or the Property unless Lender has given its prior written consent to such change in its sole discretion. In the case of a Decedent Transfer, any new individual exercising such powers must be satisfactory to Lender in its sole discretion.

(iii)   In the case of a Decedent Transfer, if the decedent was a Borrower or guarantor of the loan evidenced by the Note, within 30 days after written request by Lender, one or more other persons or entities having credit standing and financial resources equal to or better than those of the decedent, as determined by Lender in its reasonable discretion, shall assume or guarantee such loan by executing and delivering to Lender a guaranty or assumption agreement and a certificate and indemnity agreement regarding hazardous substances, each satisfactory to Lender, providing Lender with recourse substantially identical to that which Lender had against the decedent and granting Lender liens on any and all interests of the transferee in the Property.

(iv)   In the case of any Estate Planning Transfer that results in a transfer of an interest in the Property or in a change in the trustee of any trust owning an interest in the Property, the transferee or new trustee (in such new trustee's fiduciary capacity) shall, prior to the transfer, execute and deliver to Lender an assumption agreement satisfactory to Lender, providing Lender with recourse substantially identical to that which Lender had against the transferor or predecessor trustee and granting Lender liens on any and all interests of the transferee or the new trustee in the Property.

(v)   In the case of any Permitted Transfer that results in a transfer of an interest in the Property, Lender shall be provided, at no cost to Lender, with an endorsement to its title insurance policy insuring the lien of this Security Instrument, which endorsement shall insure that there has been no impairment of that lien or of its priority.

(vi)   In the case of any Permitted Transfer, Borrower or the transferee shall pay all costs and expenses reasonably incurred by Lender in connection with that Permitted Transfer, together with any applicable fees in accordance with Lender's fee schedule in effect at the time of the Permitted Transfer, and shall provide Lender with such information and documents as Lender reasonably requests in order to make the determinations called for by this Security Instrument and to comply with applicable laws, rules and regulations.

(vii)   No Default shall exist.

"Equity Interest" means partnership interests in Borrower, if Borrower is a partnership, member interests in Borrower, if Borrower is a limited liability company, or shares of stock of Borrower, if Borrower is a corporation.

4.14   **Borrower Existence**. If Borrower is a corporation, partnership, limited liability company or other entity, Lender is making this loan in reliance on Borrower's continued existence, ownership and control in its present form. Borrower will not alter its name, jurisdiction of organization, structure, ownership or control without the prior written consent of Lender and will do all things necessary to preserve and maintain said existence and to ensure its continuous right to carry on its business. If Borrower is a partnership, Borrower will not permit the addition, removal or withdrawal of any general partner without the prior written consent of Lender. The withdrawal or expulsion of any general partner from Borrower partnership shall not in any way affect the liability of the withdrawing or expelled general partner hereunder or on the Note.

4.15   **Information for Participants, Etc.** Borrower agrees to furnish such information and confirmation as may be required from time to time by Lender on request of potential loan participants and assignees and agrees to make adjustments in this Security Instrument, the Note, and the other documents evidencing or securing the loan secured hereby to accommodate such participant's or assignee's requirements, provided that such requirements do not vary the economic terms of the loan

Loan No.: 625915421

secured hereby.  Borrower hereby authorizes Lender to disclose to potential participants and assignees any information in Lender's possession with respect to Borrower and the loan secured hereby.

### 4.16    Tax and Insurance Impounds.

(a)    **Impounds.**  In addition to the payments required by the Note, Borrower agrees to pay Lender, at Lender's request, such sums as Lender may from time to time estimate will be required to pay, at least one month before delinquency, the next due taxes, assessments, insurance premiums, and similar charges affecting the Property, less all sums already paid therefor divided by the number of months to elapse before one month prior to the date when such taxes, assessments and premiums will become delinquent, such sums to be held by Lender without interest or other income to Borrower to pay such taxes, assessments and premiums. Should this estimate as to taxes, assessments and premiums prove insufficient, Borrower upon demand agrees to pay Lender such additional sums as may be required to pay them before delinquent.

(b)    **Application.**  If the total of the payments described in subsection (a) of this Section (collectively, the "Impounds") in any one year shall exceed the amounts actually paid by Lender for taxes, assessments and premiums, such excess may be credited by Lender on subsequent payments under this section. At any time after the occurrence and during the continuance of an Event of Default and at or prior to the foreclosure sale, Lender may apply any balance of funds it may hold pursuant to this Section to any amount secured by this Security Instrument and in such order as Lender may elect. If Lender does not so apply such funds at or prior to the foreclosure sale, the purchaser at such sale shall be entitled to all such funds. If Lender acquires the Property in lieu of realizing on this Security Instrument, the balance of funds it holds shall become the property of Lender. Any transfer in fee of all or a part of the Property shall automatically transfer to the grantee all or a proportionate part of Borrower's rights and interest in the fund accumulated hereunder.

(c)    **Tax Reporting Service.**  Lender may, but need not, contract with a tax reporting service covering the Property. Borrower agrees that Lender may rely on the information furnished by such tax service and agrees to pay the cost of that service within 30 days after receipt of a billing for it.

(d)    **Limited Waiver.**  Notwithstanding the foregoing, Lender will not require Borrower to deposit the Impounds for insurance premiums as provided in subsection (a) of this Section so long as: (i) the Property is owned in its entirety by the original Borrower named below (and not by any successor or transferee Borrower) and there is no change in the individuals exercising day-to-day powers of decisionmaking, management and control over either Borrower or the Property (regardless of whether Lender has consented to any such transfer or change); (ii) Borrower pays, prior to delinquency, all payments of insurance premiums that would otherwise be paid from the Impounds and, if required by Lender, Borrower provides Lender with proof of such payment; and (iii) no Event of Default occurs (regardless of whether it is later cured). If at any time Borrower fails to meet any of the foregoing requirements, Lender may at any time thereafter require the payment of all Impounds upon ten days written notice to Borrower. Notwithstanding the foregoing limited waiver, Borrower will at all times be required to pay Impounds for taxes, assessments and other similar amounts as specified in subsection (a) of this Section.

4.17    **Leases, Security Deposits, Etc.**  Borrower shall not receive or collect any rents from any present or future tenant of the Property or any part thereof in advance in excess of one (1) month's rent or collect a security deposit in excess of two (2) months' rent. Borrower shall promptly deposit and maintain all security deposits and other deposits received by Borrower from tenants in a segregated trust account in a federally insured institution. Borrower shall perform its obligations under the Leases in all material respects. The foregoing restrictions and, if a mixed use addendum to security

Loan No.: 625915421

instrument is attached hereto, any restrictions contained in that addendum, are made in accordance with Section 291-f of the New York Real Property Law, it being intended that Lender will have the benefit of the provisions of such Section 291-f.

4.18    **Condominium and Cooperative Provisions**. If the Property is not subject to a recorded condominium or cooperative regime on the date of this Security Instrument, Borrower will not subject the Property or any portion thereof to such a regime without the written consent of Lender, which consent may be granted or denied in Lender's sole discretion and, if granted, may be subject to such requirements as Lender may impose including but not limited to Borrower providing Lender with such title insurance endorsements and other documents as Lender may require. If the Property is subject to a condominium regime on the date of this Security Instrument:  (a) Borrower represents and warrants that none of the condominium units and no portion of the common elements in the Property have been sold, conveyed or encumbered or are subject to any agreement to convey or encumber; (b) Borrower shall not in any way sell, convey or encumber or enter into a contract or agreement to sell, convey or encumber any condominium unit or any of the common elements of the Property unless expressly agreed to in writing by Lender; (c) Borrower shall operate the Property solely as a rental property; and (d) the Property granted, conveyed and assigned to Lender hereunder includes all rights, easements, rights of way, reservations and powers of Borrower, as owner, declarant or otherwise, under any applicable condominium act or statute and under any and all condominium declarations, survey maps and plans, association articles and bylaws and documents similar to any of the foregoing.

4.19    **Use of Property; Zoning Changes**.  Unless required by applicable law, Borrower shall not:  (a) except for any change in use approved by Lender in writing, allow changes in the use for which all or any part of the Property is being used at the time this Security Instrument is executed; (b) convert any individual dwelling unit or common area in the Property to primarily commercial use; or (c) initiate or acquiesce in a change in the zoning classification of the Property.

4.20    **Lien Law**.  Borrower will, in compliance with Section 13 of the New York Lien Law, receive the advances secured hereby and will hold the right to receive such advances in a trust fund to be applied first for the purpose of paying the cost of any improvement and will apply the same first to the payment of the cost of any such improvement before using any part of the total of the advance for any other purpose.

5.  DEFAULT.

5.1 **Definition**.  Any of the following shall constitute an "Event of Default" as that term is used in this Security Instrument (and the term "Default" shall mean any of the following, whether or not any requirement for notice or lapse of time has been satisfied):

(a)    Any regular monthly payment under the Note is not paid so that it is received by Lender within fifteen (15) days after the date when due, or any other amount secured by this Security Instrument (including but not limited to any payment of principal or interest due on the Maturity Date, as defined in the Note) is not paid so that it is received by Lender when due;

(b)    Any representation or warranty made by Borrower to or for the benefit of Lender herein or elsewhere in connection with the loan secured hereby, including but not limited to any representation in connection with the security therefor, shall prove to have been incorrect or misleading in any material respect;

(c)    Borrower or any other party thereto (other than Lender) shall fail to perform its obligations under any other covenant or agreement contained in this Security Instrument, the Note, any other Loan Document or the Indemnity Agreement, which failure continues for a period of thirty (30) days after written notice of such failure by Lender to Borrower, but no such notice or cure

Loan No.: 625915421

period shall apply in the case of: (i) any such failure that could, in Lender's judgment, absent immediate exercise by Lender of a right or remedy under this Security Instrument, the other Loan Documents or the Indemnity Agreement, result in harm to Lender, impairment of the Note or this Security Instrument or any other security given under any other Loan Document; (ii) any such failure that is not reasonably susceptible of being cured during such 30-day period; (iii) breach of any provision that contains an express cure period; or (iv) any breach of Section 4.13 or Section 4.14 of this Security Instrument;

(d)  Borrower or any other person or entity liable for the repayment of the indebtedness secured hereby shall become unable or admit in writing its inability to pay its debts as they become due, or file, or have filed against it, a voluntary or involuntary petition in bankruptcy, or make a general assignment for the benefit of creditors, or become the subject of any other receivership or insolvency proceeding, provided that if such petition or proceeding is not filed or acquiesced in by Borrower or the subject thereof, it shall constitute an Event of Default only if it is not dismissed within sixty (60) days after it is filed or if prior to that time the court enters an order substantially granting the relief sought therein;

(e)  Borrower or any other signatory thereto shall default in the performance of any covenant or agreement contained in any mortgage, deed of trust or similar security instrument encumbering the Property, or the note or any other agreement evidencing or securing the indebtedness secured thereby, which default continues beyond any applicable cure period;

(f)  A tax, charge or lien shall be placed upon or measured by the Note, this Security Instrument, or any obligation secured hereby that Borrower does not or may not legally pay in addition to the payment of all principal and interest as provided in the Note; or

(g)  There shall occur any default under the Indemnity Agreement.

5.2  **Lender's Right to Perform.**  After the occurrence and during the continuance of any Event of Default, Lender, but without the obligation so to do and without notice to or demand upon Borrower and without releasing Borrower from any obligations hereunder, may:  make any payments or do any acts required of Borrower hereunder in such manner and to such extent as either may deem necessary to protect the security hereof, Lender being authorized to enter upon the Property for such purposes; commence, appear in and defend any action or proceeding purporting to affect the security hereof or the rights or powers of Lender; pay, purchase, contest or compromise any encumbrance, charge or lien in accordance with the following paragraph; and in exercising any such powers, pay necessary expenses, employ counsel and pay a reasonable fee therefor. All sums so expended shall be payable on demand by Borrower, be secured hereby and bear interest at the Default Rate of interest specified in the Note from the date advanced or expended until repaid.

Lender, in making any payment herein, is hereby authorized, in the place and stead of Borrower, in the case of a payment of taxes, assessments, water rates, sewer rentals and other governmental or municipal charges, fines, impositions or liens asserted against the Property, to make such payment in reliance on any bill, statement or estimate procured from the appropriate public office without inquiry into the accuracy of the bill, statement or estimate or into the validity of any tax, assessment, sale, forfeiture, tax lien or title or claim thereof; in the case of any apparent or threatened adverse claim of title, lien, statement of lien, encumbrance, deed of trust, mortgage, claim or charge Lender shall be the sole judge of the legality or validity of same; and in the case of a payment for any other purpose herein and hereby authorized, but not enumerated in this paragraph, such payment may be made whenever, in the sole judgment and discretion of Lender such advance or advances shall seem necessary or desirable to protect the full security intended to be created by this Security Instrument, provided further, that in connection with any such advance, Lender at its option may and is hereby authorized to obtain a continuation report

Loan No.: 625915421

of title prepared by a title insurance company, the cost and expenses of which shall be repayable by Borrower without demand and shall be secured hereby.

5.3 **Remedies on Default.** Upon the occurrence of any Event of Default all sums secured hereby shall become immediately due and payable, without notice or demand, at the option of Lender and Lender may:

(a)     Have a receiver appointed as a matter of right on an *ex parte* basis without notice to Borrower and without regard to the sufficiency of the Property or any other security for the indebtedness secured hereby and, without the necessity of posting any bond or other security. Such receiver shall take possession and control of the Property and shall collect and receive the Rents. If Lender elects to seek the appointment of a receiver for the Property, Borrower, by its execution of this Security Instrument, expressly consents to the appointment of such receiver, including the appointment of a receiver *ex parte* if permitted by applicable law. The receiver shall be entitled to receive a reasonable fee for managing the Property, which fee may be deducted from the Rents or may be paid by Lender and added to the indebtedness secured by this Security Instrument. Immediately upon appointment of a receiver, Borrower shall surrender possession of the Property to the receiver and shall deliver to the receiver all documents, records (including records on electronic or magnetic media), accounts, surveys, plans, and specifications relating to the Property and all security deposits. If the Rents are not sufficient to pay the costs of taking control of and managing the Property and collecting the Rents, any funds expended by Lender, or advanced by Lender to the receiver, for such purposes shall become an additional part of the indebtedness secured by this Security Instrument. The receiver may exclude Borrower and its representatives from the Property. Borrower acknowledges and agrees that the exercise by Lender of any of the rights conferred under this Section 5.3 shall not be construed to make Lender a mortgagee-in-possession of the Property so long as Lender has not itself entered into actual possession of the Property.

(b)     Foreclose this Security Instrument as provided in Section 7 or otherwise realize upon the Property as permitted under applicable law.

(c)     Sue on the Note as permitted under applicable law.

(d)     Avail itself of any other right or remedy available to it under the terms of this Security Instrument, the other Loan Documents or applicable law.

5.4 **No Waiver.** By accepting payment of any sum secured hereby after its due date, Lender does not waive its right either to require prompt payment when due of all other sums so secured or to declare an Event of Default for failure to do so.

5.5 **Waiver of Marshaling, Etc.** In connection with any foreclosure sale under this Security Instrument, Borrower hereby waives, for itself and all others claiming by, through or under Borrower, any right Borrower or such others would otherwise have to require marshaling or to require that the Property be sold in parcels or in any particular order.

5.6 **Remedies Cumulative; Subrogation.** The rights and remedies accorded by this Security Instrument shall be in addition to, and not in substitution of, any rights or remedies available under now existing or hereafter arising applicable law. All rights and remedies provided for in this Security Instrument or afforded by law or equity are distinct and cumulative and may be exercised concurrently, independently or successively. The failure on the part of Lender to promptly enforce any right hereunder shall not operate as a waiver of such right and the waiver of any Default or Event of Default shall not constitute a waiver of any subsequent or other Default or Event of Default. Lender shall be subrogated to the claims and liens of those whose claims or liens are discharged or paid with the loan proceeds hereof. Notwithstanding anything contained in the Note to the contrary, upon an Event of

Loan No.: 625915421

Default and without notice or demand, all amounts owing under the Note, including all accrued but unpaid interest, shall thereafter bear interest at the rate of five percent (5.00%) per annum above the Note Rate (as defined in the Note) until the entire indebtedness is paid in full, whether before or after the entry of judgment of foreclosure.

6. **CONDEMNATION, ETC.** Any and all awards of damages, whether paid as a result of judgment or prior settlement, in connection with any condemnation or other taking of any portion of the Property for public or private use, or for injury to any portion of the Property ("Awards"), are hereby assigned and shall be paid to Lender which may apply or disburse such Awards in the same manner, on the same terms, subject to the same conditions, to the same extent, and with the same effect as provided in Section 4.4.6 above for disposition of Insurance Proceeds. Without limiting the generality of the foregoing, if the taking results in a loss of the Property to an extent that, in the reasonable opinion of Lender, renders or is likely to render the Property not economically viable or if, in Lender's reasonable judgment, Lender's security is otherwise impaired, Lender may apply the Awards to reduce the unpaid obligations secured hereby in such order as Lender may determine, and without any adjustment in the amount or due dates of installments due under the Note. If so applied, any Awards in excess of the unpaid balance of the Note and other sums due to Lender shall be paid to Borrower or Borrower's assignee. Lender shall in no case be obligated to see to the proper application of any amount paid over to Borrower. Such application or release shall not cure or waive any Default or notice of default hereunder or invalidate any act done pursuant to such notice. Should the Property or any part or appurtenance thereof or right or interest therein be taken or threatened to be taken by reason of any public or private improvement, condemnation proceeding (including change of grade), or in any other manner, Lender may, at its option, commence, appear in and prosecute, in its own name, any action or proceeding, or make any reasonable compromise or settlement in connection with such taking or damage, and obtain all Awards or other relief therefor, and Borrower agrees to pay Lender's costs and reasonable attorneys' fees incurred in connection therewith. Lender shall have no obligation to take any action in connection with any actual or threatened condemnation or other proceeding.

7. **FORECLOSURE.** Upon the occurrence of any Event of Default, Lender shall have the option, without notice or demand, to declare all sums secured hereby immediately due and payable and to proceed to foreclose on this Security Instrument as now or then provided by law (in which event Lender shall be entitled to the appointment of a receiver) pursuant to a judicial proceeding in accordance with Article 13 of the New York Real Property Actions and Proceedings Law ("RPAPL") or by advertisement in accordance with Article 14 of RPAPL. Any foreclosure shall forever bar Borrower and all persons claiming under Borrower from all right and interest in the Property. In any such proceeding Lender shall be entitled to recover all costs and expenses (regardless of the particular nature thereof and whether incurred prior to or during such proceeding) incident to the realization of its rights hereunder, including court costs and reasonable attorneys' fees. Lender shall be entitled to possession of the Property during any period of redemption. Borrower hereby waives any right it or its successors in interest may have in the event of acceleration or foreclosure to obtain a partial release of the Property from the lien of this Security Instrument by paying less than the entire amount then secured hereby, or to partially redeem the Property by paying less than the amount necessary to effect full redemption. If a deficiency remains after proper application of the proceeds of sale of the Property, Borrower shall pay the same immediately after determination of the amount thereof.

8. **NOTICES.**

8.1 **Borrower and Lender.** Any notice to or demand upon Borrower (including any notice of default or notice of sale) or notice to or demand upon Lender shall be deemed to have been sufficiently made for all purposes when deposited in the United States mails, postage prepaid, registered or certified, return receipt requested, addressed to Borrower at its address set forth above or to Lender at the following address:

Page 17 of 21

Loan No.: 625915421

> Washington Mutual Bank
> National Commercial Operations Center
> P.O. Box 9178
> Coppell, Texas 75019-9178
> Attention: Portfolio Administration

or to such other address as the recipient may have directed by notice in accordance herewith.

      8.2 **Waiver of Notice**. The giving of notice may be waived in writing by the person or persons entitled to receive such notice, either before or after the time established for the giving of such notice.

      9. **MODIFICATIONS, ETC.** Each person or entity now or hereafter owning any interest in the Property agrees, by executing this Security Instrument or taking the Property subject to it, that Lender may in its sole discretion and without notice to or consent of any such person or entity: (i) extend the time for payment of the obligations secured hereby; (ii) discharge or release any one or more parties from their liability for such obligations in whole or in part; (iii) delay any action to collect on such obligations or to realize on any collateral therefor; (iv) release or fail to perfect any security for such obligations; (v) consent to one or more transfers of the Property, in whole or in part, on any terms; (vi) waive or release any of holder's rights under any of the Loan Documents; (vii) agree to an increase in the amount of such obligations or to any other modification of such obligations or of the Loan Documents; or (viii) proceed against such person or entity before, at the same time as, or after it proceeds against any other person or entity liable for such obligations.

      10. **SUCCESSORS AND ASSIGNS.** All provisions herein contained shall be binding upon and inure to the benefit of the respective successors and assigns of the parties.

      11. **GOVERNING LAW; SEVERABILITY.** This Security Instrument shall be governed by the law of the state of New York. In the event that any provision or clause of this Security Instrument or the Note conflicts with applicable law, the conflict shall not affect other provisions of this Security Instrument or the Note that can be given effect without the conflicting provision and to this end the provisions of this Security Instrument and the Note are declared to be severable.

      12. **BORROWER'S RIGHT TO POSSESSION.** Borrower may be and remain in possession of the Property for so long as no Event of Default exists and Borrower may, while it is entitled to possession of the Property, use the same.

      13. **MAXIMUM INTEREST.** No provision of this Security Instrument or of the Note shall require the payment or permit the collection of interest in excess of the maximum permitted by law. If any excess of interest in such respect is herein or in the Note provided for, neither Borrower nor its successors or assigns shall be obligated to pay that portion of such interest that is in excess of the maximum permitted by law, and the right to demand the payment of any such excess shall be and is hereby waived and this Section 13 shall control any provision of this Security Instrument or the Note that is inconsistent herewith.

      14. **ATTORNEYS' FEES AND LEGAL EXPENSES.** In the event of any Default under this Security Instrument, or in the event that any dispute arises relating to the interpretation, enforcement or performance of any obligation secured by this Security Instrument, Lender shall be entitled to collect from Borrower on demand all fees and expenses incurred in connection therewith, including but not limited to fees of attorneys, accountants, appraisers, environmental inspectors, consultants, expert witnesses, arbitrators, mediators and court reporters. Without limiting the generality of the foregoing, Borrower shall pay all such costs and expenses incurred in connection with: (a) arbitration or other alternative dispute resolution proceedings, trial court actions and appeals; (b) bankruptcy or other

Case 1:12-cv-01899-SLT-VMS   Document 12-5   Filed 07/03/12   Page 21 of 36 PageID #: 463

Loan No.: 625915421

insolvency proceedings of Borrower, any guarantor or other party liable for any of the obligations secured by this Security Instrument or any party having any interest in any security for any of those obligations; (c) judicial or nonjudicial foreclosure on, or appointment of a receiver for, any of the Property; (d) post-judgment collection proceedings; (e) all claims, counterclaims, cross-claims and defenses asserted in any of the foregoing whether or not they arise out of or are related to this Security Instrument; (f) all preparation for any of the foregoing; and (g) all settlement negotiations with respect to any of the foregoing.

15. PREPAYMENT PROVISIONS. If at any time after an Event of Default and acceleration of the indebtedness secured hereby there shall be a tender of payment of the amount necessary to satisfy such indebtedness by or on behalf of Borrower, its successors or assigns, the same shall be deemed to be a voluntary prepayment such that the sum required to satisfy such indebtedness in full shall include, to the extent permitted by law, the additional payment required under the prepayment privilege as stated in the Note.

16. TIME IS OF THE ESSENCE. Time is of the essence under this Security Instrument and in the performance of every term, covenant and obligation contained herein.

17. FIXTURE FILING. This Security Instrument constitutes a financing statement, filed as a fixture filing in the real estate records of the county of the state in which the real property described in Exhibit A is located, with respect to any and all fixtures included within the list of improvements and fixtures described in Section 1.2 of this Security Instrument and to any goods or other personal property that are now or hereafter will become a part of the Property as fixtures.

18. MISCELLANEOUS.

18.1     Whenever the context so requires the singular number includes the plural herein, and the impersonal includes the personal.

18.2     The headings to the various sections have been inserted for convenient reference only and shall not modify, define, limit or expand the express provisions of this Security Instrument.

18.3     This Security Instrument, the Note and the other Loan Documents constitute the final expression of the entire agreement of the parties with respect to the transactions set forth therein. No party is relying upon any oral agreement or other understanding not expressly set forth in the Loan Documents. The Loan Documents may not be amended or modified except by means of a written document executed by the party sought to be charged with such amendment or modification.

18.4     No creditor of any party to this Security Instrument and no other person or entity shall be a third party beneficiary of this Security Instrument or any other Loan Document. Without limiting the generality of the preceding sentence, (a) any arrangement (a "Servicing Arrangement") between Lender and any servicer of the loan secured hereby for loss sharing or interim advancement of funds shall constitute a contractual obligation of such servicer that is independent of the obligation of Borrower for the payment of the indebtedness secured hereby, (b) Borrower shall not be a third party beneficiary of any Servicing Arrangement, and (c) no payment by a servicer under any Servicing Arrangement will reduce the amount of the indebtedness secured hereby.

18.5     Upon written request of Borrower in connection with a refinancing of the loan secured hereby, Lender shall assign this Security Instrument, without recourse, warranty or representation whatsoever to the refinancing lender upon (a) payment of a sum equal to all monies or indebtedness outstanding under the Note, this Security Instrument and all other Loan Documents, including but not limited to, the outstanding principal amount of the loan secured hereby, all interest accrued thereon and any Prepayment Premium (as defined in the Note), Lender's standard assignment fee as in effect at the

Loan No.: 625915421

time of such assignment and payment of all costs and expenses (including, without limitation, reasonable in-house and outside attorneys' fees) incurred in connection with the assignment of this Security Instrument, and (b) Borrower's delivery to Lender of an affidavit pursuant to Section 275 of the New York Real Property Law and such other documents and instruments as Lender may reasonably request.

19. WAIVER OF JURY TRIAL. EACH OF BORROWER AND LENDER (FOR ITSELF AND ITS SUCCESSORS, ASSIGNS AND PARTICIPANTS) WAIVES ITS RIGHT TO A TRIAL BY JURY OF ANY CLAIM OR CAUSE OF ACTION BASED UPON, ARISING OUT OF OR RELATED TO THIS SECURITY INSTRUMENT, THE OTHER LOAN DOCUMENTS OR THE TRANSACTIONS PROVIDED FOR HEREIN OR THEREIN, IN ANY LEGAL ACTION OR PROCEEDING OF ANY TYPE BROUGHT BY ANY PARTY TO ANY OF THE FOREGOING AGAINST ANY OTHER SUCH PARTY, WHETHER SOUNDING IN CONTRACT, TORT OR OTHERWISE. ANY SUCH CLAIM OR CAUSE OF ACTION SHALL BE TRIED BY A COURT SITTING WITHOUT A JURY.

*[Remainder of this page intentionally left blank]*

Loan No.: 625915421

DATED as of the day and year first above written.

R N R Management, LLC a New York limited liability company

_Chitrah Ramkissoon_

By:  Chitrah Ramkissoon, Member

Case 1:12-cv-01899-SLT-VMS   Document 25   Filed 06/05/12   Page 354 of 376 PageID #: 4673

State of New York    )
                     ) ss.:
County of Nassau     )

On the 7th day of November, in the year 2006, before me, the undersigned, a notary public in and for said state, personally appeared CHITRAH RAMKISSOON, personally known to me or proved to me on the basis of satisfactory evidence to be the individual(s) whose name(s) is (are) subscribed to the within instrument and acknowledged to me that he/she/they executed the same in his/her/their capacity(ies), and that by his/her/their signature(s) on the instrument, the individual(s), or the person upon behalf of which the individual(s) acted, executed the instrument.

NOTARY PUBLIC

Loan No.: 625915421

# EXHIBIT A

## LEGAL DESCRIPTION

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF

EXHIBIT A

Case 1:12-cv-01899-SLT-VMS  Document 12-5  Filed 06/08/12  Page 236 of 236 PageID #: 1635

## Fidelity National Title Insurance Company
TITLE NO. 06-7405-48038-Q

### SCHEDULE A-1 (*Description*)

ALL that certain plot, piece or parcel of land, situate, lying and being in the Borough and County of Queens, City and State of New York, known and designated as being part of lot number 166 on a certain map entitled "Map of Van Wyck Park, surveyed May 1891 by James F. Deehan, successor Martin G. Johnson" and filed in the Queens County Clerk's Office, now Register, Queens County, August 13, 1892 as Map Number 976, new number 1944, bounded and described according to said map as follows:

BEGINNING at a point on the southerly side of Brooklyn and Jamaica Plank road, now known as Jamaica Avenue, distant 79.99 feet easterly from the corner formed by the intersection of the said southerly side of Brooklyn and Jamaica Plank Road with the easterly side of Magnolia Avenue now known as 134th Street;

RUNNING THENCE southerly parallel with the easterly side of 134th Street and part of the distance through a party wall 79.65 feet;

THENCE easterly and at right angles to the easterly side of 134th Street 22.45 feet to land now or formerly of Reno;

THENCE northerly parallel with 134th Street and along said land now or formerly of Reno, 71.20 feet to the southerly side of Jamaica Avenue;

THENCE westerly along the southerly side of Jamaica Avenue 23.93 feet to the point or place of BEGINNING.

*THE POLICY TO BE ISSUED under this commitment will insure the title to such buildings and improvements on the premises which by law constitute real property.*

*FOR CONVEYANCING ONLY: Together with all the right, title and interest of the party of the first part, of in and to the land lying in the street in front of and adjoining said premises.*

*SCHEDULE A-1 (Description)*
Rev. (03/04)